_____

RYAN VENEZIALE          :
                           :
          Plaintiff,     :     Hon. Joseph H. Rodriguez
                           :
         v.              :     Civil Action No. 14-6015
                           :
TROOPER D. DEICHMAN, JR., :
et al.,                   :
                           :
         Defendants.  :     <u>OPINION</u>
_____:

      This case arises from the arrest of Plaintiff Ryan Veneziale by two New Jersey State Police Officers on September 28, 2012. Presently before the Court are the competing summary judgment motions of the remaining parties in this case: Plaintiff Ryan Veneziale ("Veneziale") and Defendants Trooper Steven Stone ("Stone"), Sergeant Kion Wilson ("Wilson"), and the State of New Jersey.[1] A number of other claims have been withdrawn and the claims against Defendants John Doe (1-5) will be dismissed.[2] The remaining claims against the individual defendants Stone and Wilson are for False Arrest (Count V), False Imprisonment (Count VI), and Excessive Force (Count I) under both 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1. The

---

[1] Contemporaneous with the filing of this motion, the parties entered into a stipulation which withdrew all claims against Defendant Detective Daniel Deichman, Jr. without prejudice. [Dkt. No. 38].

[2] In addition, the stipulation of the parties withdrew the claims of malicious prosecution and those pursuant to the New Jersey Tort Claims Act without prejudice. [Dkt. No. 38]. As for the John Doe (1-5) defendants, Federal Rule 21 permits the Court to exclude the John and Jane Doe parties from an action when appropriate. Fed. R. Civ. P. 21; see Adams v. City of Camden, 461 F. Supp. 2d 263, 271 (D.N.J. 2006) (citing Hightower v. Roman, Inc., 190 F. Supp. 2d 740, 754 (D.N.J. 2002); Atlantic Used Auto Parts v. City of Philadelphia, 957 F. Supp. 622, 625 (E.D. Pa. 1997) (holding "fictitious party names may be used 'at least until reasonable discovery permits the actual defendants to assume their places ...,' however, ... '[f]ictitious names must eventually be dismissed, if discovery yields no identities.' ")). Plaintiff filed this action on September 26, 2014 and discovery was completed by February 28, 2017. [Dkt. No. 35]. The identity of the unnamed remaining defendants has not been found in the intervening years since this suit was filed and/or in the completion of the discovery period. Therefore, the Court finds that the interests of justice permit dropping the John Doe (1-5) defendants from this suit.

remaining claim against the State of New Jersey alleges Failure to Train in violation of both 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 (Count IV).

The Court has considered the written submission of the parties and the arguments advanced at the hearing on November 1, 2017. For the reasons stated on the record that day, as well as those that follow, Plaintiff Veneziale's Motion for Summary Judgment is denied and the motion of Defendants Wilson, Stone, and the State of New Jersey is granted in part and denied in part.

## I. Background

On September 28, 2012, Plaintiff Ryan Veneziale was a passenger in a car driven by Nicolas Geracito. Geracito was intoxicated and crashed the car into a tree on private property in Hainesport Township, New Jersey. Police Officers from the New Jersey State Police arrived on the scene, including Stone and Wilson. The car was totaled, but both passengers survived. Geracito failed a field sobriety test and was arrested at the scene.

What happens next is recorded by police video cameras which capture audio and video; however, there is a significant period of time where the parties can be heard, but they are outside the view of the camera. Veneziale was questioned by Wilson and was asked for his driver's license in order to the complete the accident report. This interaction can only be heard. Based on subsequent activity, it could be that the parties where positioned just beyond the camera view. The interaction between Veneziale and Wilson begins the chain of events that form the predicate for Plaintiff's Complaint.

There is no dispute that Plaintiff refused to give Wilson his driver's license, despite being asked and directed multiple times to furnish it. The video/audio depicts a frank, but tension filled conversation carried out in calm, metered tones. Veneziale can be heard protesting that, because he was not driving the car, he was not obligated to turn his license over to the police. The audio/video captures Veneziale saying "I wasn't driving" in response to Wilson's demands for the license. After Wilson informs Veneziale that he is required to furnish his license even though he was not operating the vehicle, Plaintiff states that he "disagree[s]." At this point, although the words alone may suggest a conversational tone and there is no yelling, the frustration is palpable. Then, Stone intervenes and the situation escalates. Stone can be heard shouting at Veneziale and demands that he "get[s his] driver's license out now[]" and warns Veneziale that this is his last chance to cooperate with the police. Veneziale retorts: "what are you going to do to me?"

Shortly after Veneziale's retort, Wilson, Veneziale, and Stone come into the camera view in a tussle. Stone places his forearm into the shoulder or back of Veneziale and appears to forcefully slam him to the ground. Upon impact, Plaintiff's mouth strikes the cement while his right side strikes the driver's parked car. Veneziale can be seen hitting the front of a car and striking the ground with some force. On two separate occasions, Veneziale informs the officers of damage to his teeth.

Wilson and Stone contend that they all fell to the ground because Veneziale, who was intoxicated, lost his balance while he was actively resisting arrest. Veneziale contends that he was unnecessarily thrown to the ground by the frustrated officers, causing his face to strike the cement resulting in the fracture of his front teeth. The

video only depicts the parties as Veneziale hits the car and the ground. There is no video account to prove or disprove the parties' accounts of how they all came into a struggle. The audio confirms the parties' assertion that no one verbally informed Veneziale that he was under arrest before he can be seen hitting the ground.

Veneziale was handcuffed, taken to the hospital by ambulance, and then placed under arrest and charged with obstruction of justice, resisting arrest, and disorderly conduct. More charges were filed against Veneziale because he was combative during his transport from the hospital to the police station. During this ride, he allegedly spit blood on Stone, repeatedly unbuckled his seatbelt, struggled with Stone, and attempted to kick Wilson, who was operating the vehicle. As a result, additional charges of aggravated assault on a police officer, attempted escape, and throwing of bodily fluid charges were levied against him. These charges stemming from the transport are not relevant here.

On April 9, 2013, Veneziale applied for and was granted entry into a pre-trial diversion ("PTD") program for both sets of charges. He successfully completed the program and both complaints were dismissed. Plaintiff filed this action on September 26, 2014. The Defendants' chief claim is that Plaintiff's Complaint is barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), because successful completion of a pre-trial intervention/diversion program is not a favorable termination. For the reasons that follow, the Court disagrees as to Count I only.

## II.     <u>Standard of Review</u>

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving

party, the moving party is entitled to judgment as a matter of law. <u>Pearson v. Component Tech. Corp.</u>, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)); <u>accord</u> Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. <u>Id.</u> In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Id.</u>; <u>Maidenbaum v. Bally's Park Place, Inc.</u>, 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. <u>Andersen</u>, 477 U.S. at 256-57. Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

III. <u>Analysis</u>

The primary issue is whether Plaintiff's claims of False Arrest, False Imprisonment, and Excessive Force are barred by the holding in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), because none of the criminal charges levied against him were favorably terminated. Both parties move for summary judgment on the balance of the remaining claims. The court will address whether any claims survive <u>Heck</u> scrutiny, then consider the balance of the claims on the merits.

A. Scrutiny under <u>Heck v. Humphrey</u>

The Court finds that Plaintiff's claims of false arrest and false imprisonment are barred by <u>Heck</u> but, for the reasons that follow, the claim of excessive force is not barred by <u>Heck</u>. In <u>Heck</u>, the Supreme Court stated:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction

or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to suit.

Id. at 486–87.

The reasoning underscoring the holding in Heck is that a favorable finding in a plaintiff's civil case could have the effect of implicitly invalidating the unfavorable outcome in the criminal proceedings. Holmes v. Cushner, No. CIV.A. 10-5384, 2012 WL 6624108, at *5 (D.N.J. Dec. 19, 2012). For this reason, a plea of guilty in a criminal proceeding necessarily precludes a civil claim for damages if such a claim undermines the integrity of the criminal conviction. Gilles v. Davis, 427 F.3d 197, 208–09 (3d Cir. 2005) ("Under Heck, a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal, or impaired by collateral proceedings."). Relevant here, participation in a pre-trial diversion/intervention program is considered an unfavorable termination and Heck preclusion may apply to some of the civil claims. Hendrix v. City of Trenton, 06-CV-3942, 2009 WL 5205996, *4-5 (D.N.J., Dec. 12, 2009) (citing Gilles, 427 F.3d at 210).

Defendants rely on several cases to support the conclusion that Plaintiff's claims of false arrest, false imprisonment and excessive force must fail under Heck because of Veneziale's participation in New Jersey's PTD program. That program required

Veneziale to take responsibility for his charges of resisting arrest, obstruction of the administration of justice, and disorderly conduct. See Def. Exs. M & N.

The charged offenses relevant here are: 1. resisting arrest; eluding officer in violation of N.J.S.A. 2C:29-2a (1), 2. obstructing administration of law in violation of N.J.S.A. 2C:29-1, and 3. disorderly persons offense pursuant to N.J. Stat. Ann. § 2C:33-2a (1).

To prove a claim for unlawful arrest, Plaintiff must show that he was arrested without probable cause. Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997). Probable cause exists where " 'the facts and circumstances within … [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Schneider v. Simonini, 163 N.J. 336, 749 A.2d 336, 349–50 (N.J. 2000) (citing Brinegar v. United States, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). Probable cause is less than proof needed to convict, but more than mere suspicion. Id. A police officer can defend a § 1983 claim by establishing: (1) that he or she acted with probable cause; or, (2) if probable cause did not exist, that a reasonable police officer could have believed it existed. Kirk v. City of Newark, 109 N.J. 173, 536 A.2d 229, 234 (N.J. 1988) (citing Anderson, 483 U.S. at 663–64). New Jersey's resisting arrest statute does not make a distinction as between lawful and unlawful arrests. "It is not a defense to a prosecution under this subsection that the law enforcement officer was acting unlawfully in making the arrest, provided he was acting under color of his official authority and provided the law enforcement officer announces his intention to arrest prior to the resistance." Id.

Here, by participating in the PTI program, Veneziale waived the defense associated with the fact that the officers in this case cannot be heard announcing the arrest prior to Veneziale striking the ground. He waived that defense because success on his claims of false arrest and false imprisonment would imply the invalidity of the outcome of his municipal court adjudication through PTI and are therefore, barred under Heck. See Whaley v. Borough of Collingswood, No. CIV.A. 10-4343, 2012 WL 2340308, at *7 (D.N.J. June 18, 2012); see also Holmes v. Cushner, No. CIV.A. 10-5384, 2012 WL 6624108, at *5 (D.N.J. Dec. 19, 2012). For the same reasons, his claim of false imprisonment is also barred under Heck.[3]

The law governing application of Heck to Plaintiff's excessive force civil claims arising out of unfavorable terminations of resisting arrest and obstruction of justice criminal charges is less clear in New Jersey. The disparity arises out of an interpretation of New Jersey's elements for Veneziale's criminal offenses which were unfavorably terminated after successful conclusion of the PTD program, specifically for a resisting arrest charge. Defendants principally[4] rely on the New Jersey Appellate Division's

---

[3] Under New Jersey common law, the tort of false imprisonment is defined as when an actor improperly constrains a person's freedom of movement by force or by threats of force communicated through conduct or words. Maietta v. USPS, 749 F. Supp. 1344, 1366 (D.N.J. 1990). New Jersey requires two elements for false imprisonment: (1) detention of the person against his or her will, and (2) a lack of proper legal authority or "legal justification." Mesgleski v. Oraboni, 330 N.J. Super. 10, 748 A.2d 1130, 1138 (N.J. Super. Ct. App. Div. 2000). For the same reasons that Heck bars the false arrest claim, this claim is also barred. False arrest and false imprisonment are different names for the same tort, not separate causes of action. Roth v. Golden Nugget Casino/Hotel, Inc., 576 F. Supp. 262, 265 (D.N.J. 1983) (citing Price v. Phillips, 218 A.2d 167, 169 (N.J. Super. Ct. App. Div. 1966)).

[4] The Court also distinguishes this case from the facts in Feeney v. Powell, No. CIV. 06-1849 (RBK), 2008 WL 2478385, at *4 (D.N.J. June 17, 2008), heavily relied upon by Defendants. In that case, the district court held that plaintiff's excessive force claim was barred by Heck. Feeney was indicted on several counts and ultimately plead guilty to two counts of aggravated assault and one count of resisting arrest. In entering his plea, Feeney waived any claim to self-defense. Feeney, No. CIV. 06-1849 (RBK), 2008 WL 2478385, at *2. Feeney admitted to assaulting the officers, using an amount of force greater than that employed by the officers. The Court found that this admission implied that the police officers' use of force was justified and left no room for a viable Fourth Amendment claim that would not undermine his

decision in <u>Bustamante v. Borough of Paramus</u>, 413 N.J. Super. 276 (N.J. App. Div. 2010) for the proposition that Plaintiff's unfavorable termination of his criminal charge of resisting arrest definitively precludes a civil suit against the arresting officers for excessive force. The issue in <u>Bustamante</u>, whether a "plaintiff's civil complaint for damages under common law and § 1983 is barred as a matter of law because of [plaintiff's] guilty plea to resisting arrest[,]" was, at the time, a case of first impression in the State of New Jersey. <u>Id.</u> at 579. After reviewing the split in the circuits regarding application of <u>Heck</u> preclusion to claims of resisting arrest, the New Jersey Appellate Division found the Third Circuit's interpretation as set forth in <u>Nelson v. Jashurek</u>, 109 F.3d 142, 145−46 (3d Cir. 1997) to be persuasive. Applying the limitations set forth in <u>Nelson</u>, the <u>Bustamante</u> court concluded that permitting the excessive force claim to go forward would impermissibly undermine the validity of the conviction for fourth degree resisting arrest. The court reasoned as follows:

> Returning to the issues before us, plaintiff pled guilty to resisting arrest as a <u>fourth-degree offense</u>. That presumptively established that plaintiff knew defendants were law enforcement officers, that they were effectuating his arrest, that he purposely prevented, or attempted to prevent, his arrest, and, fearing his arrest, fled. <u>See</u> <u>State v. Simms</u>, 369 N.J. Super. 466, 470−72, 849 A.2d 573 (App. Div. 2004) (defining elements of the crime); see also Model Jury Charge (Criminal), "Resisting Arrest—Flight Alleged" (2007). However, "a person may resist excessive force used by the arresting officer, even if the arrest is otherwise legal." Cannel, New Jersey Criminal Code Annotated, comment 10 on N.J.S.A. 2C:3−4 (2009) (citing <u>State v. Mulvihill</u>, 57 N.J. 151, 156−57, 270 A.2d 277 (1970)); <u>see also</u> <u>Simms</u>, supra, 369 N.J. Super. at 472, 849 A.2d 573 ("[A]n officer effecting an arrest may use only such force as is reasonable under the circumstances....").

---

aggravated assault convictions. As will be discussed in further detail <u>infra.</u>, there are questions of fact related to the manner of arrest and the force used in the course of Veneziale's arrest that were absent in <u>Feeney</u>. As a result, <u>Feeney</u> is not persuasive on this point.

By pleading guilty, however, plaintiff forfeited any claim that defendants used excessive force in effecting his arrest. See ibid. ("[I]f the officer uses excessive or unnecessary force 'the citizen may respond or counter with the use of reasonable force to protect himself ....' ") (quoting Mulvihill, 57 N.J. at 156, 270 A.2d 277); see also Model Jury Charge (Criminal), "Justification—Self Defense Resisting Arrest" (1988) (making the defense available only if the officer used unlawful force to effectuate the arrest).

Bustamante, 413 N.J. Super. 276, 295, 994 A.2d at 585–86 (emphasis added).

Bustamante's holding centered on the fact that the alleged excessive force in that case occurred during the arrest, as opposed to after the criminal defendant was subdued. "[T]o the extent plaintiff's claims involved defendants' use of force in effectuating his arrest, as opposed to after he was in custody, they are barred because a favorable outcome in the civil action would be inconsistent with the admissions he made by pleading guilty." Id. Some courts in this district have applied Bustamante's rigid interpretation of Heck in the face of an unfavorable adjudication of a resisting arrest charge. See, e.g. Panarello v. City of Vineland, 160 F. Supp. 3d 734 (D.N.J. 2016) ("Permitting this claim to go forth presents the possibility that if the jury were to find for Panarello on this issue, this would be a finding that directly contravenes the conclusions of the fact-finder from the criminal proceeding, which Heck does not permit."); Santini v. Fuentes, 11-CV-639, 2017 WL 3189449 (D.N.J. July 27, 2017) (Because Plaintiff pled guilty to resisting arrest, "[a] finding that the Troopers violated Plaintiff's constitutional rights through excessive force would render his plea invalid.").

Although the Bustamante court lauded the reasoning in Nelson, the holdings differ; the Appellate Division distinguished the Third Circuit's holding in Nelson on the grounds that Nelson involved violations of Pennsylvania's criminal code and that the elements of New Jersey's resisting arrest charge were different and would be

compromised by the very proofs a plaintiff needs to establish in the excessive force claim. The facts of this case do fit into the reasoning applied by the <u>Bustamante</u> court. Rather, "the application of Heck in this case, . . . would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages." <u>VanGilder v. Baker</u>, 435 F.3d 689, 692 (7th Cir. 2006).

A Fourth Amendment excessive force claim, under 42 U.S.C. §1983, calls for an evaluation of whether police officers' actions are objectively reasonable in light of the facts and circumstances confronting him.[5] <u>Graham v. Conner</u>, 490 U.S. 386, 397 (1989). While the question of reasonableness is objective, the court may consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. <u>Id.</u> at 396, 109 S. Ct. at 1872; <u>see also</u> <u>Groman</u>, 47 F.3d at 634. "The calculus of reasonableness must embody allowance for the fact that 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" <u>Id.</u> at 396–97, 109 S. Ct. at 1871–73; <u>see also</u> <u>Sharrar</u>, 128 F.3d at 820–21. In a claim for excessive force, "the central question is 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" <u>Brooks v. Kyler</u>, 204 F.3d 102, 106 (3d Cir. 2000) (quoting

---

[5] Plaintiff also alleges that the Defendants violated the New Jersey Civil Rights Act. "The NJCRA is interpreted as analogous to § 1983," <u>Szemple v. Correctional Med. Servs., Inc.</u>, 493 Fed. Appx. 238, 241 (3d Cir. 2012), and a court "will analyze ... NJCRA claims through the lens of § 1983." <u>Trafton v. City of Woodbury</u>, 799 F.Supp.2d 417, 444 (D.N.J. 2011); <u>see</u> <u>Estate of Martin v. U.S. Marshals Serv. Agents</u>, 649 Fed. Appx. 239, 245 n.4 (3d Cir. 2016) (holding that "it appears undisputed that Plaintiffs' claims under the New Jersey Constitution and the New Jersey Civil Rights Act trigger the same legal elements and principles as ... [the] federal causes of action [under Section 1983]").

Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

Furthermore, appropriate attention should be given "to the circumstances of the police action, which are often 'tense, uncertain, and rapidly evolving.' " Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) (quoting Graham, 490 U.S. at 396). See also Graham, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary," violates the constitution.).

Veneziale's underlying resisting arrest adjudication is not compromised by success on his excessive force claim. Here, Veneziale's charge of resisting arrest is classified by the complaint and summons as a disorderly person's offense, unlike the fourth degree offense of resisting arrest considered in Bustamante. See Def. Ex. J., Complaint-Summons 0316-S-2012-000156. A reasonable jury could conclude that Veneziale was forcefully thrown to the ground for his verbal refusal to comply, or even accepting the police officers' version of events, that he resisted arrest when he flung his arms pushed away, and that the force used was objectively unreasonable. This finding does not impugn Plaintiff's unfavorable adjudication on his resisting arrest and obstruction claims even assuming that he was actively resisting arrest.

The manner of subduing Veneziale is still subject to constitutional scrutiny; an arrestee does not invite the use of unconstitutional force simply because he is engaged in unlawful activity. See Dyer v. Lee, 488 F.3d 876, 884 (11th Cir. 2007) ("Heck was not intended to be a shield to protect officers from § 1983 suits. It was intended to protect habeas corpus and promote finality and consistency. Provided those goals are met, a § 1983 suit is not barred by Heck."). Admitting to certain unlawful conduct, including resisting arrest, in the course of an arrest does not automatically forfeit the right to

challenge the conduct of the police in the course of the arrest.  See VanGilder, 435 F.3d at 692 ("Put another way, police subduing a suspect could use as much force as they wanted-and be shielded from accountability under civil law-as long as the prosecutor could get the plaintiff convicted on a charge of resisting. This would open the door to undesirable behavior and gut a large share of the protections provided by § 1983.").

The facts of this case fall more squarely within the Third Circuit's unpublished holding in Garrison v. Porch, 376 F. App'x 274, 278 (3d Cir. 2010), which was filed approximately one month before Bustamante but not considered by the New Jersey Appellate Division in fashioning its decision, Nelson, and Lora-Pena v. F.B.I., 529 F.3d 503, 506 (3d Cir. 2008) and finds that Veneziale's resisting arrest adjudication does not preclude an excessive force claim against the arresting police officers in this case, even where an admission of guilty flows from the PTD adjudication.  Nelson instructs that excessive force claims can survive a Heck challenge in certain circumstances.  Nelson, 109 F.3d at 145–46.

In Nelson, the Third Circuit found that a resisting arrest conviction does not preclude a civil claim for excessive force, explaining that "there undoubtedly could be 'substantial force' which is objectively reasonable and 'substantial force' which is excessive and unreasonable." Nelson, 109 F.3d at 145.  The Court reasoned that a reasonable juror could find that despite actively resisting arrest, the criminal defendant was subjected to unreasonable and/or an excessive amount force by the arresting police officer. Id. at 146. Likewise, in Lora-Pena, the Third Circuit found that the plaintiff's Delaware convictions for resisting arrest and assaulting the arresting police officers would not be inconsistent with a finding that the officers, during a lawful arrest, used

excessive (or unlawful) force in response to plaintiff's unlawful actions. <u>Lora-Pena v. F.B.I.</u>, 529 F.3d 503, 506 (3d Cir. 2008). Albeit involving underlying Delaware and Pennsylvania criminal cases, the logic of <u>Lora-Pena</u> and <u>Nelson</u> has been extended by courts in this district with respect to New Jersey convictions for resisting arrest, especially where the issue of excessive force was not adjudicated at the criminal trial level.

For example, in <u>Weber v. Rodriguez</u>, No. CIV. 07-2097 RBK/KMW, 2011 WL 2555358, at *4 (D.N.J. June 27, 2011) the plaintiff was convicted of resisting arrest and aggravated assault in violation of N.J. Stat. Ann. §§ 2C:29–2(a)(3)(a) and 2C:12–1(b)(5), a violation of the third degree for resisting arrest. The question of excessive force, in this post- <u>Bustamante</u> case, during the course of the arrest was not put before the jury. The New Jersey District Court reasoned that, like the law enforcement officers in <u>Lora–Pena</u>, it was possible that the arresting officers could have reacted to the plaintiff's criminal conduct with excessive force. <u>Id.</u> As a result, the district court concluded that the plaintiff's conviction in state court was not inconsistent with a finding that arresting police officer defendants used excessive force to effectuate the arrest of the resisiting defendant. <u>Id.</u>; <u>see also</u> <u>Jones v. City of Vineland</u>, No. 13-7132 (NLH), 2016 WL 1305251, at *8 (D.N.J. Apr. 4, 2016) (noting the reasonableness of the use of force is not necessary dispensed with at the criminal conviction stage for charges of resisting arrest); <u>Holmes v. Cushner</u>, No. CIV.A. 10-5384, 2012 WL 6624108, at *5 (D.N.J. Dec. 19, 2012) ("While the Court appreciates the Defendants' argument, it nonetheless finds that Plaintiff's resisting arrest conviction does not necessarily preclude her excessive force claim against Cushner.").

Such a circumstance was also present in <u>Garrison</u>, where the Third Circuit held, in an unpublished opinion, that a New Jersey conviction for resisting arrest does not necessarily preclude an arrestee for recovering damages on a § 1983 excessive force claim. <u>Garrison</u>, 376 F. App'x at 278.  In <u>Garrison</u>, the plaintiff pled guilty to simple assault on a police officer and resisting arrest. The Third Circuit held that the fact that the criminal defendant assaulted the arresting police officer did not preclude a civil action against the arresting officer for excessive force, where the defendant suffered fractured vertebrae. <u>Garrison</u>, 376 F. App'x at 277–78.  The Court explained that the criminal charge for simple assault and the civil claim for excessive force did not offend <u>Heck</u> because there is no logical inconsistency in the two claims.  "The fact that Garrison's threatened or attempted use of force was unlawful does not automatically mean that there is no use of force that [the defendant officer] could have used in response which could have risen to the level of unreasonable and excessive." <u>Id.</u> at 278.

The Third Circuit noted the acceptance of this conclusion by other courts: "[O]ther courts of appeals … have generally held that the mere fact of a conviction for assault or similar conviction arising out of the same incident does not automatically preclude recovery on an excessive force claim brought under § 1983." <u>Id.</u> (emphasis added). The Court went on to explain that even though "the fact that Garrison was acting in an unruly and threatening manner certainly factors into the totality of the circumstances and may have justified a greater use of force than would have been reasonable had Garrison been peaceful and cooperative, it certainly did not dispense with the reasonableness requirement altogether." <u>Id.</u>

Defendant here argues that because Veneziale did not plead self defense at the criminal level with respect to his resisting arrest claim and as reasoned in <u>Bustamante</u>, he is precluded from pursuing the excessive force claim. The Third Circuit explicitly rejects such an argument in <u>Garrison</u> and that logic extends here. The plaintiff in <u>Garrison</u> acknowledged that he assaulted the police officer before excessive force was employed to arrest him. Essentially the claim was that the police officer's response to Garrison's assault employed a degree of force "greater than was reasonably necessary to subdue him and place him under arrest." <u>Id.</u> The Court reasoned that the availability of a self-defense affirmative defense was irrelevant because the initial assault was not committed in self-defense; it was an offensive act to which the response was excessive.[6]

> However, due to the nature of Garrison's factual claims as alleged in his complaint and pleadings, the issue of self-defense is irrelevant. Garrison has not claimed that his act of simple assault was committed to protect himself. He acknowledges that he assaulted Porch before Porch allegedly used excessive force. He claims that after his act of assault, Porch then responded by using a degree of force that was much greater than was reasonably necessary to subdue him and place him under arrest. This is clearly a claim of excessive force in response to an assault, and the theoretical availability of a self-defense claim in other simple assault cases is of no relevance to the present case.

<u>Garrison</u>, 376 F. App'x at 278.

---

[6] This fact further distinguishes this case from <u>Panarello</u>, where the district court validated its conclusion that plaintiff waived his excessive force claim by failing to assert self-defense. <u>Panarello</u>, 160 F. Supp. 3d at 756–57. In support, the district court cited N.J. Stat. Ann. § 2C:3-4, which provides in relevant part that a criminal arrestee may "resist an arrest which the actor knows is being made by a peace officer in the performance of his duties, although the arrest is unlawful, unless the peace officer employs unlawful force to effect such arrest[.]" <u>Id.</u> Reasoning that Panarello's failure to invoke that defense explicitly validated the police officer's use of force as lawful, the district court found that <u>Heck</u> barred plaintiff's Fourth Amendment claim. <u>Id.</u> The facts here differ- there was either nothing to resist as the parties mutually fell or the police employed force seemingly out of nowhere, or in response to Veneziale's fighting posture and flailing, the police used force to subdue Veneziale before they informed him he was under arrest. Under any of these circumstances, the affirmative defense of self-defense does not apply. Veneziale claims unlawful force was used to throw him to the ground before officers told him he was under arrest.

Here, Veneziale resisted arrest by, according to him, refusing to give the officers his license; his charge reflects disorderly persons' conduct as opposed to fourth degree resisting arrest considered in <u>Bustamante</u>.  He argues that the response by the officers to his uncooperative, resisting behavior during his arrest was excessive under the law and that his resisting arrest adjudication does not foreclose his excessive force claim. This reasoning is consistent with that set forth by the Third Circuit in <u>Garrison</u>.  As a result Veneziale's claim for excessive force is not barred by <u>Heck</u>. <u>Id.</u> at 278. The claims for false arrest and false imprisonment are barred under <u>Heck</u> and summary judgment is granted in favor of Defendants as to those claims as set forth in Counts V and VI, and denied as to Count I, excessive force.

Having found that Veneziale's excessive force claim survives scrutiny under <u>Heck</u>, the Court turns to the question of whether qualified immunity attaches to the police officer defendants at this time.

B.  Qualified Immunity

Plaintiff's constitutional claim of excessive force is governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution.  <u>See</u> <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 120 (1992). The parties agree, notwithstanding the <u>Heck</u> arguments, that as pled, the Complaint states a cognizable claim under Section 1983 because Plaintiff alleges a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 235 (3d Cir. 2008) (citing <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996); <u>Williams v. Borough of West Chester, Pa.</u>, 891 F.2d 458, 464 (3d Cir. 1989). There is no dispute to these facts.

At issue is whether the Defendants are entitled to qualified immunity. The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably" and it "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (internal quotation omitted). Properly applied, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S.

635, 640 (1987)).  That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Couden v. Duffy, 446 F.3d 483, 492 (2006).  "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity.  Couden, 446 F.3d at 492 (internal citations omitted).  Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized."  Malley, 475 U.S. at 341 (1986).  See also Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (The general touchstone is whether the conduct of the official was reasonable at the time it occurred.)  Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant. See Beers-Capital v. Whetzel, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

The Court finds that there are questions of fact, related to whether the officers' conduct was objectively reasonable in light of the situation confronting them which preclude qualified immunity from attaching at this time.  Stone testifies that in addition to Veneziale's verbal uncooperativeness, Veneziale appeared to "square up" to him "as if he were about to fight[.]" Stone Dep., ¶ 17.  Sgt. Wilson, on the other hand, did not observe Plaintiff "square up" or take any fighting position, but instead claims that Veneziale attempt to walk away. Wilson Dep. ¶ 16.  Because the video depicts only an audio account of the force used, there are credibility determinations related to the series of events that caused Veneziale's fall and underscore the nature of the force used.  Even if Veneziale "squared up," a reasonable jury could conclude that the force used was excessive. Qualified immunity does not attach under the circumstances of this case. Summary judgment is denied.

C.  Failure to Train

Finally, summary judgment is granted as to County IV, a claim of failure to train against the State of New Jersey.  The United States Supreme Court has held that "neither a State nor its officials acting under their official capacities are 'persons' under § 1983." <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989). <u>See also</u> <u>Didiano v. Balicki</u>, 488 Fed. Appx. 634, 638 (3d Cir. 2012) (finding state prison and its administrator in her official capacity, as arms of the state, did not fall within the definition of a "person" for purposes of the New Jersey Civil Rights Act; statutory definition explicitly stated that the word "person" included the State of New Jersey only in the limited circumstance of certain property disputes, which were not applicable). As such, an employee of the state named as a defendant in a civil rights action may be held liable only if that person has personal involvement in the alleged wrongs and is sued in their personal capacity. <u>See</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 31 (1991) ("state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983"). Liability under § 1983 may not be based on the doctrine of respondeat superior. <u>See</u> <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 n.14 (3d Cir. 1993). Summary judgment is granted as to Count IV, which is plead against only the State of New Jersey, because the State is not a "person" subject to suit under § 1983.

## IV.    Conclusion

For the reasons stated on the record and those set forth above, summary judgement is granted in favor of Defendants as to Counts IV (failure to train), V (false arrest), and VI (false imprisonment).  Summary judgment is denied as to Count I, which alleges a claim of excessive force against the individual police officers Stone and Wilson.

An appropriate Order shall issue.


Dated: June 25, 2018


s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE